[Filed December 1, 1891.]

## GEORGE W. PUCKETT v. W. F. BENJAMIN, ADMINISTRATOR.

RESULTING TRUST—PURCHASE PRICE—TENANTS IN COMMON.—Where two or more persons together advance the purchase price of land the title to which is taken in the name of one of them, a trust will result in favor of those not named in the deed conveying the title, in an undivided share of the property proportioned to the part of the price advanced by each.

NOTICE—LIS PENDENS.—The pendency of a suit involving the title to real property is notice to all persons of every fact alleged in the pleadings.

Douglas county: M. L. PIPES, Judge.

Defendant appeals. Affirmed.

The object of this suit is to declare a resulting trust in favor of the plaintiff in certain real property, consisting of a flouring mill, water-power, and fixtures, and the land on which the same are situated, all of which are particularly described in the complaint.

The complaint alleges that on the ninth day of April, 1888, one Philander Maxwell was the owner in fee of said premises, and that on said day, for the consideration of eighteen thousand dollars, to him paid by plaintiff and one L. Puckett in equal parts, he bargained and sold all of said property to said L. Puckett and the plaintiff in equal undivided interests, and on said day by deed, made by said Maxwell and wife, conveyed all of said property to L. Puckett, who took said conveyance to himself alone, without the plaintiff's knowledge or consent, and against his wishes, and thereby became and now is the holder of the legal title to said land in trust as to an undivided half thereof for the plaintiff; that said deed was duly recorded on the twenty-seventh day of April, 1888. Then followed substantially the like allegations in relation to another parcel of land purchase from Mrs. Maxwell at the same time for the consideration of three hundred dollars. This deed was also duly recorded. The plaintiff then adds a count claiming a partition of said real property.

In addition to this, the complaint, after showing the plaintiff's interest in said real property, alleges the commencement of an action in the circuit court of Douglas county, Oregon, by one W. F. Benjamin, administrator, against L. Puckett. By his complaint, which is set out in this action, the said W. F. Benjamin, as administrator of John S. Catching, deceased, seeks to recover of the defendant L. Puckett five thousand dollars for the wrongful and unlawful killing of the said John S. Catching on the eighth day of August, 1889. An affidavit for an attachment is also copied into the complaint. It is then alleged that the clerk of said circuit court, after receiving an undertaking therefor, issued a writ of attachment therein.

It is also alleged that a summons was duly issued in said action and placed in the hands of the sheriff for service, who returned the same to the effect that the defendant L. Puckett, after due diligence and search, could not be found within the county of Douglas and state of Oregon. The

complaint then alleges the making of an affidavit in said action by the plaintiff's attorney therein, which affidavit is also copied into the complaint herein. This affidavit, after alleging the proceedings in the case of Benjamin, administrator, against Puckett, as above, including the making of the affidavit for the attachment, and the execution of the undertaking, and the issuing of the writ of attachment, alleges that the real property described therein was attached by virtue thereof, and the proper certificate of the attachment was made by the sheriff and filed with the clerk. The affidavit then recites that the plaintiff and the affiant therein have made careful inquiry and search for the place of residence of the said defendant, but are unable to find his whereabouts; that immediately after the defendant killed said John S. Catching he fled from justice, and has ever since kept himself concealed for fear of being arrested and brought to trial for the crime committed in said killing and murder, and to avoid service of summons upon him; that said defendant left no family or member of his family within the state of Oregon upon whom service of summons can be made, and he had no dwelling-house therein; that the last place to which plaintiff and affiant have been able to trace the said defendant was in the mountains in the eastern part of Douglas county, Oregon, and the affiant has reason to believe and does believe that the said defendant is now concealed and keeps himself concealed within the state of Oregon with the intent to prevent his arrest for the crime committed in the said killing, and with the intent to avoid the service of summons upon him in the action, and has kept himself concealed for six consecutive weeks prior to the date of this affidavit; the affiant then prays that an order be made for the publication of summons in the *Plaindealer*, a weekly newspaper of general circulation, published at Roseburg, in said county and state.

On the eleventh day of July, 1890, the judge of said court made an order at chambers reciting that it appeared from the affidavit that a good cause of action existed against

the defendant, and that he was a proper and necessary party thereto, and that defendant was keeping himself concealed within the state of Oregon, to avoid the service of summons upon him in said cause, and after diligent search the sheriff of Douglas county was unable to find him; it was ordered that service of the summons in said action be made upon the defendant by the publication thereof in the *Plaindealer*, a weekly newspaper published at Roseburg, and of general circulation in Douglas county, state of Oregon, at least once each week for six weeks consecutively. After alleging the publication of the summons in the *Plaindealer*, pursuant to said order, the complaint alleges the issuance of a writ of attachment in said action upon which the land in controversy was attached on the seventeenth day of July, 1890, as the sole property of said L. Puckett, and that a certificate of said attachment was duly made and filed, etc.    The complaint alleges that at and during all of said times the said L. Puckett was without the state of Oregon, and was not concealed therein.    It is also alleged that the affidavit for the attachment is not true, and is wholly inconsistent with the complaint in said action, and that the writ of attachment in said action was and is void, but the record thereof being regular upon its face, the same is a cloud upon plaintiff's interest in said real property.

Only the defendant Benjamin answered.    His answer denies most of the material allegations of the complaint. For a separate answer he alleges that at the time named in the complaint, Maxwell and wife owned all the property described, and at said time, for a valuable consideration paid by said L. Puckett, conveyed the whole of said property to said L. Puckett, who immediately went into possession of the same, and has ever since said date continued in the lawful possession thereof as the sole owner.    The answer further alleges that on the fifteenth day of December, 1890, the defendant duly recovered a judgment in said action against said L. Puckett for five thousand dollars, which judgment was duly entered and docketed.    The reply

alleges that said pretended judgment was given without jurisdiction in said court to render the same, and is void. The defendant L. Puckett did not answer but made default.

The cause was referred, for the purpose of taking the evidence, and at the March term, 1891, the court heard the cause, and entered a decree in favor of the plaintiff according to the allegations of the complaint, from which this appeal was taken.

*J. C. Fullerton,* and *G. W. Colvig,* for Appellant.

It is essential that a partnership, which is alleged to be the owner of land, the legal title to which is in one of the partners, shall be created or proven by some memorandum in writing. (*Knott* v. *Knott,* 6 Or. 142.)

In order that a resulting trust shall be established in real property, the party claiming it must prove a perfect contract in everything, except he is not required to prove it by writings. (*Wagonblast* v. *Whitney,* 12 Or. 83; *Cooke's Appeal,* 8 Pa. St. 510; *Sutton* v. *Myrick,* 39 Ark. 429; *Plymale* v. *Comstock,* 9 Or. 318; *Brown* v. *Lord,* 7 Or. 302; *Odell* v. *Morin,* 5 Or. 96; *Blum* v. *Robertson,* 24 Cal. 128; 2 Pom. Eq. § 1040; *Midmer* v. *Midmer,* 26 N. J. Eq. 304; *Ducie* v. *Ford,* 138 U. S. 587; *Parker* v. *Newitt,* 18 Or. 274.)

Under the evidence and facts developed in this case, plaintiff cannot maintain a suit for the property in dispute. There is no contract or memorandum in writing of any kind between him and L. Puckett, who took the legal title to the land and premises. (Hill's Code, § 785; *Wallace* v. *Scoggins,* 17 Or. 476; *Feeney* v. *Howard,* 79 Cal. 525; 12 Am. St. Rep. 162; *Barr* v. *O'Donnell,* 76 Cal. 469; *Dunphy* v. *Ryan,* 116 U. S. 491.)

But if it were not necessary that there be a memorandum in writing of the alleged sale of one-half of the property to Geo. Puckett, and it is not necessary that he be in possession to maintain a suit for a conveyance, it certainly is necessary that the proof of his claim thereto be clear, certain, and convincing. (*Sisemore* v. *Pelton,* 17 Or. 546; *Wallace* v. *Scog-*

*gins,* 18 Or. 502; 17 Am. St. Rep. 749; *Boyd* v. *McLean,* 1 Johns. Ch. 582; *Baker* v. *Vining,* 30 Me. 126; 1 Perry on Trusts, §§ 134, 137.)

The court will not declare a trust where one of the parties to the transaction is dead, and the evidence of the other, the only witness, is uncertain and unsatisfactory, and a long time is suffered to elapse before the commencement of the suit. (*Clark* v. *Pratt,* 15 Or. 304; *Naill* v. *Keese,* 5 Tex. 23; 51 Am. Dec. 746.)

Parol evidence is admissible to defeat plaintiff's claim. (*Adams* v. *Guerard,* 29 Ga. 651; 76 Am. Dec. 625; *Osborne* v. *Endicott,* 6 Cal. 149; 65 Am. Dec. 498; *Strimpfler* v. Roberts, 18 Pa. St. 283; 57 Am. Dec. 606; *Baker* v. *Vining,* 30 Me. 121; 50 Am. Dec. 617.)

If the record contain a recital of the facts requisite to confer jurisdiction, it is conclusive when attacked collaterally. (*Heatherly* v. *Hadley,* 4 Or. 1; *McCauley* v. *Fulton,* 44 Cal. 361; *Hahn* v. *Kelly,* 34 Cal. 391; 94 Am. Dec. 742; *Sharp* v. *Brunnings,* 35 Cal. 533; *Vassault* v. *Austin,* 36 Cal. 695; *Quivey* v. *Porter,* 37 Cal. 462; *Moore* v. *Martin,* 38 Cal. 437.)

*Lane & Lane,* and *E. B. Preble,* for Respondent.

Writs of attachment are authorized only in actions for liquidated damages sounding in contract. (*Sheppard* v. *Yocum,* 11 Or. 234; *Suksdorff* v. *Bigham,* 13 Or. 369.)

The judgment would be *in personam* only, if the attachment were valid, because the lien of attachment would have lapsed by the omission to enter an order of sale in the judgment. (*Bremer* v. *Fleckenstein,* 9 Or. 266.)

The record purports to aver the manner in which jurisdiction was obtained. Therefore it will not be presumed, in aid of jurisdiction, that the summons was served or jurisdiction obtained in any other way. (*Barber* v. *Morris,* 37 Minn. 194; 5 Am. St. Rep. 836; *Ely* v. *Tallman,* 14 Wis. 30.)

The very essence of due process of law is process brought to the actual notice of the person proceeded against, and a judgment obtained without such process is absolutely void, except it be a judgment *in rem* or quasi *in rem,* or determin-

ing a status. (Cooley Con. Lim. 403, 405; *Pennoyer* v. *Neff,*
95 U. S. 714; *Freeman* v. *Alderson,* 119 U. S. 185; *Cooper* v.
*Smith,* 25 Iowa, 269; *Judah* v. *Stephenson,* 10 Iowa, 493;
Wade on Notice, §§ 1084, 1137, 1138; *Webster* v. *Reid,* 11 How.
459; *Boswell* v. *Otis,* 9 How. 348; *Furgeson* v. *Jones,* 17 Or.
211; 11 Am. St. Rep. 808; *Needham* v. *Thayer,* 147 Mass. 536.)

Nothing will be presumed in aid of jurisdiction, and a
judgment will be an absolute nullity unless it affirmatively
appear from the record itself that all the proceedings
directed by the statute have been strictly complied with.
(*Odell* v. *Campbell,* 9 Or. 298; *Morey* v. *Morey,* 27 Minn. 265;
*Braly* v. *Seaman,* 30 Cal. 611; *Bardsley* v. *Hines,* 33 Iowa,
157; *Jordan* v. *Giblin,* 12 Cal. 100; Wade on Notice, § 1030;
*Ricketson* v. *Richardson,* 26 Cal. 149.)

When a court, even of general jurisdiction, exercises
special statutory powers contrary to the course of the com-
mon law, even if all the proceedings required by statute do
appear from the record, still the judgment will be void
upon its face unless it further affirmatively appear from
the record that all the facts exist which the statute requires
to exist before it authorizes said proceedings. (*Northcut* v.
*Lemery,* 8 Or. 316; *Caro Bros.* v. *O. & C. R. R. Co.* 10 Or. 510;
Wade Notice, § 1033.)

The plaintiff in the suit at bar is a stranger to the record of
said action at law, and his claim upon the land in question
is in equity antedating said action; therefore, he can collat-
erally impeach the judgment in that action by facts *dehors*
the record. (*Eureka Iron & Steel Co.* v. *Brosnahan,* 66
Mich. 489; *Walker* v. *Goldsmith,* 14 Or. 125.)

*A fortiori,* said plaintiff can thus impeach the judgment
aforesaid in the suit at bar which is for the express purpose,
as to appellant, of attacking the said action at law. (*New-
comb* v. *Dewey,* 27 Iowa, 381; *Penrose* v. *McKenzie,* 116 Ind. 35.)

A judgment lien is subject to all outstanding equities of
which the judgment creditor had actual or constructive
notice at the time of docketing his judgment. (*Baker* v.
*Woodward,* 12 Or. 3; *Stannis* v. *Nicholson,* 2 Or. 332: *Riddle*

v. *Miller*, 19 Or. 468; *Blankenship* v. *Douglas*, 26 Tex. 225; 82 Am. Dec. 608; *Lamberton* v. *Merchants' Bank*, 21 Minn. 281.)

A trust results in favor of one who pays the purchase price of land, deeded to another.     (*Dyer* v. *Dyer*, 2 Cox, 92; *Beck* v. *Uhrich*, 13 Pa. St. 636; 53 Am. Dec. 507; *Blankenship* v. *Douglas*, 26 Tex. 225; 82 Am. Dec. 608; 2 Pom. Eq. §§ 1037, 1049; *Linnville* v. *Smith*, 6 Or. 202; *Shively* v. *Parker*, 9 Or. 500; *Taylor* v. *Miles*, 19 Or. 550; *Parker* v. *Newitt*, 18 Or. 275.)

And if a deed be made to one of two paying the purchase price, a trust results to the other, of an interest proportionate to his payment.     (2 Pom. Eq. § 1038; *Dikeman* v. *Norrie*, 36 Cal. 94; *Case* v. *Codding*, 38 Cal. 191; *Settembree* v. *Putnam*, 30 Cal. 490.)

And it is presumed until proved otherwise, that they paid the price in equal parts. (*Shoemaker* v. *Smith*, 11 Humph. 88.)

Nor is it essential to raising the trust that the price be paid in money.     (*Taylor* v. *Miles*, 19 Or. 550.)

The fact that the deed is made to one, other than he who pays the price, without the knowledge and consent of the latter, precludes the possibility of a gift being intended. (*Parker* v. *Newitt*, 18 Or. 275; *Peer* v. *Peer*, 11 N. J. Eq. 435.)

Notwithstanding the statute of frauds, it may be proved by parol that the purchase price moved from one not the grantee, even if the deed recite payment by the grantee. (*Chenoweth* v. *Lewis*, 9 Or. 150; *Robinson* v. *Robinson*, 22 Iowa, 427; *Miller* v. *Hathaway*, 27 Cal. 119; *Case* v. *Codding*, 38 Cal. 427.)

In finding the facts in an equity suit, this court will be governed by the decision of the court below, unless it be affirmatively shown to be clearly against the evidence. (*Fahic* v. *Lindsay*, 8 Or. 474; *Swegle* v. *Wells*, 7 Or. 222; *DeLashmutt* v. *Everson*, 7 Or. 212; *O'Leary* v. *Fargher*, 11 Or. 225.)

STRAHAN, C. J.—The first question presented by the record is plaintiff's claim to an undivided half of the real property described in the complaint, arising in his favor

out of the facts alleged, by way of resulting trust. The main contention is as to the facts. A brief examination of the evidence is therefore rendered necessary. The plaintiff was a witness in his own behalf. His evidence tends to prove that in January, 1886, L. Puckett, the defendant, went from Colorado to Kentucky, where the plaintiff was then residing, and proposed to the plaintiff that he should return to Colorado with him, and the two should there enter into the stock business together; that at said time, the defendant offered to sell to the plaintiff one-half interest in his stock, which was agreed upon, and plaintiff accompanied defendant to Colorado.

The plaintiff paid six hundred dollars on the stock at the time, and made other payments in Colorado. After remaining there about thirteen months, the plaintiff returned to Kentucky, and while he was still there the defendant returned also. The defendant then wished the plaintiff to return to Colorado and take charge of their entire interests there, which the plaintiff did. The defendant came directly from Kentucky to Oregon for the purpose of securing the property now in controversy. After the defendant came to Oregon, he wrote to the plaintiff in Colorado proposing to turn over their property there for that described in the complaint, and suggested that he wished to make the change on account of his health, to which proposition the plaintiff finally acceded, though with some reluctance. Plaintiff then turned over to Mr. Maxwell in Colorado, who was agent for P. Maxwell, owner of the Oregon property, six hundred head of cattle, one hundred head of horses, a desert claim of six hundred and forty acres, one tract of forty-five acres, and the plaintiff's homestead of one hundred and sixty acres, and the defendant directed the plaintiff to come to Oregon. At the time Maxwell executed the deed to the property in controversy to L. Puckett, the plaintiff was still in Colorado, and did not know or consent to its execution to L. Puckett. The Colorado property at the time of the exchange was esti-

mated at eighteen thousand dollars. Witness thinks the Oregon property was worth about twelve thousand five hundred dollars, and consisted of property used for milling, farming, and stock-raising. After the plaintiff's arrival in Oregon, the business of the firm was conducted in the name of L. Puckett; but the plaintiff continued to have the same interest in it that he previously had in the Colorado property. On his cross-examination, the witness gave evidence tending to prove that at the time he purchased one-half interest in the Colorado property, it was estimated to be of the value of about seven thousand dollars, and that he paid two thousand dollars for his interest therein. N. E. Puckett, a witness for the plaintiff, gave evidence tending very strongly to corroborate the plaintiff's evidence in several essential particulars. Mr. J. S. Pickett's evidence is also corroborative of the claim of the plaintiff; and so also is that of Robert Pentlow. The evidence of the latter also tends to prove that plaintiff and defendant were mutually interested in the property in controversy, and that they managed the same together, each giving the business his attention. The evidence of George Dement tends to prove that L. Puckett admitted to him in conversation on the subject that the plaintiff owned an interest in the ranch and stock in Colorado, and also an equal interest in the property now in controversy. The evidence of Riley Butcher is of the same character.

The defendant attempts to meet this evidence by the cross-examination of the same witnesses; also by proving a lease in L. Puckett's name of said property by Felix Puckett, another brother of plaintiff and defendant, to one Schultz without any objection on the part of the plaintiff. But the general effect of the evidence does not seem to be shaken or impaired by anything thus shown. The facts remain uncontradicted in any way that the plaintiff owned one-half of the Colorado ranch and stock and that the same were given in payment for this property, and that without his knowledge or consent L. Puckett took a deed to the same

in his own name while the plaintiff still remained in Colorado.

Do these facts raise a resulting trust in plaintiff's favor in an undivided one-half of the property in controversy? This subject was carefully considered by this court in *Parker* v. *Newitt*, 18 Or. 274, and it was held that where one purchases an estate, and pays for it, and takes the title in the name of another; or when one purchases land with the money of another, and takes the title to himself, there arises, by operation of law, a resulting trust in favor of him whose money paid for it. This is in pursuance of the ancient equitable doctrine that the beneficial estate follows the consideration and attaches to the party from whom the consideration comes. In this case, however, the plaintiff did not advance the entire consideration; he only owned an undivided half of the property, which constituted the consideration for the property in controversy; but that fact does not affect the principle. Where two or more persons together advance the price, and the title is taken in the name of one of them, a trust will result in favor of the other in an undivided share of the property proportioned to his share of the price. (*Case* v. *Codding*, 38 Cal. 191; *Dikeman* v. *Norrie*, 36 Cal. 94; *Miller* v. *Birdsong*, 7 Bax. 531; *Cramer* v. *Hoose*, 93 Ill. 503; *Smith* v. *Patton*, 12 W. Va. 541; *Rhea* v. *Tucker*, 56 Ala. 450.)

Upon the argument here, counsel for respondent contended that the judgment in the case of *Benjamin* v. *Puckett* was void for the reason that Puckett was not served with summons, and did not appear in the action, and his property had not nor could not be attached in the action, and they cite Cooley's Const. Lim. *403, *404, *405; *Pennoyer* v. *Neff*, 95 U. S. 745; *Freeman* v. *Alderson*, 119 U. S. 185; *Cooper* v. *Smith*, 25 Iowa, 269; *Judah* v. *Stephenson*, 10 Iowa, 493; Wade Notice, §§ 1084, 1137, 1138; *Webster* v. *Reid*, 11 How. 459; *Ferguson* v. *Jones*, 17 Or. 204; 11 Am. St. Rep. 808; *Needham* v. *Thayer*, 147 Mass. 536, to sustain their contention; but in the view we have taken of this case it is unnecessary to consider or

decide that question for this reason: This suit was pend-
ing, and the amended complaint contained a full statement
of the plaintiff's equities before the rendition of the judg-
ment in the case of *Benjamin, Admr.* v. *Puckett*. The judg-
ment in that case therefore did not affect nor in any way
bind the plaintiff's interest even conceding it to have been
a valid judgment.

The pendency of the suit before judgment charged
Benjamin with notice of the plaintiff's equities set up in
the complaint, and whatever rights he acquired by virtue
of the judgment against L. Puckett were subordinate and
subject to the rights of the plaintiff. The *lis pendens* was
notice to him of every fact alleged in the pleadings. The
plaintiff will therefore take his interest in the undivided
half of the property, free and unaffected by the lien of
Benjamin's judgment against L. Puckett; and the order
for the injunction restraining Benjamin from enforcing or
attempting to enforce his judgment against any greater
interest in said real property than an undivided half
thereof will be made perpetual.

But here the plaintiff's interest in that question ends.
Whether the judgment be valid as against L. Puckett, is a
question in which plaintiff has no interest, and which could
not be decided in this suit. It can only properly arise at
the suit of L. Puckett, or some person claiming his interest
in real property in Douglas county, either at the time or
after Benjamin shall attempt to enforce said judgment.
We do not decide or intimate in any manner that Benja-
min's judgment is valid. We simply leave the question
open, to be decided when it shall properly arise unin-
fluenced and unaffected by anything that is said in this
case.

Let the decree be in all things affirmed.